<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| RODNEY WALKER, | : | |
| Plaintiff, | : | Civil Action No. 14-1182 (RMB) |
| v. | : | **OPINION** |
| SCO. ROMAN, et al., | : | |
| Defendants. | : | |

---

**BUMB**, District Judge:

    This matter comes before the Court upon Plaintiff's submission of a civil complaint ("Complaint") seeking relief under 42 U.S.C. § 1983, and his application to prosecute this matter <u>in</u> <u>forma</u> <u>pauperis</u>.  <u>See</u> Docket Entries Nos. 1 and 1-1.

    Based upon his affidavit of indigence, the Court will grant Plaintiff <u>in</u> <u>forma</u> <u>pauperis</u> status under 28 U.S.C. § 1915(a), and will order the Clerk to file the Complaint.  In conjunction with that, this Court is obligated to screen the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether the Complaint should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

    For the reasons detailed below, the Complaint will be dismissed with a narrowly-tailored leave to amend.

Plaintiff, an incarcerated individual, asserts that, on October 23, 2012, he was assaulted by four other inmates when prisoners, including Plaintiff and these four inmates, were in the prison's recreation yard. See Docket Entry No. 1, at 4. He alleges that, as a result of that incident, he suffered serious injuries. See id. He also asserts that, during that incident, Officer Roman ("Roman") "never attempted to come to [Plaintiff's] aid," id. at 5, while Officer Zenyuk ("Zenyuk"), who was in the "bubble" booth used by officers to monitor the recreation yard, "call[ed] a code" (i.e., alerted the other officers about the incident) only when the incident already ended.[1] Id. at 6.

In addition to Roman and Zenyuk, Plaintiff named four other individuals as Defendants: (a) the Commissioner of New Jersey Department of Corrections ("Commissioner"); (b) the warden ("Warden"); (c) the prison's Chief Investigator ("Investigator"); and (d) an assistant warden Jane Doe ("Doe"). See id. at 2-4.

---

[1] Plaintiff supplemented his allegations against Zenyuk by stating that, during the post-incident investigation, Zenuyk informed her superiors that "she saw [Petitioner] get[ting] kicked in the face by one of the [four inmates]." Docket Entry No. 1, at 6. Plaintiff supplemented his allegations against Roman by stating that, three days prior to the incident, Roman performed a search of Plaintiff's cell, during which Roman "threw all of [Plaintiff's] belongings out on the catwalk" and did not put those belongings back in their place, causing Plaintiff's utterances expressing his displeasure with that fact and Roman's response, "I do whatever it is I want to do on my shift." Id. at 4. Plaintiff now speculates that this interaction between him and Roman was "the reason [Roman] did not come to [Plaintiff's] aid" during the assault incident three days later. See id.

As to the Commissioner, Plaintiff alleged that he violated Plaintiff's rights since: (a) the Commissioner held a supervising position; and (b) Plaintiff wrote two letters to the Commissioner expressing Plaintiff's desire to commence criminal proceedings against Roman and Zenyuk, but received no response.  Analogously, with regard to the Investigator, Plaintiff asserted that the Investigator violated his rights since: (a) he supervised the investigation unit; and (b) Plaintiff wrote him a letter stating Plaintiff's interest in commencing criminal proceedings against Roman and Zenyuk, but also received no response.[2]  In the same vein, Plaintiff asserted that the Warden violated his rights since: (a) he was supervising the prison's operations; and (b) Plaintiff wrote grievances to the Warden about the incident, but received no response.

As to Doe, Plaintiff asserted that she violated his rights because, being the monitor of "all red phones on each and every unit, . . . [she] ignored the fact that the red phone [in the recreation yard unit] was not operating and had not been

---

[2] Plaintiff alleged that his lack of success at commencing criminal prosecution of Roman and Zenyuk violated his access to the courts rights.  However, an inmate's interest in *commencing* a criminal matter cannot implicate his/her access rights, since these rights exist only in connection to his/her criminal matter, i.e., where the inmate acts as a defendant (e.g., the inmate's direct appeal or post-conviction relief proceedings), the inmate's habeas matters attacking his/her conviction, denial of parole, term calculation, etc., and *civil* matters related to or ensuing from the inmate's conditions of confinement.

operating for quite some time[,] which [fact precluded Zenyuk's] calling of a code of any kind [at the time of the incident]" and that inability to "call a code" was the reason why the incident went uninterrupted by prison officers. Id. at 5.

Stating that he was suing Defendants in their individual and official capacities, Plaintiff requested preliminary injunctive relief (by an order preemptively barring Defendants' retaliation against him in connection with his commencement of this action, that is, if such retaliation is ever attempted), a declaratory relief (in the form of an order finding that Defendants violated Plaintiff's constitutional rights), $1 million in compensatory damages and $1 million in punitive damages. See id. at 8-9.

The bulk of Plaintiff's claims lack merit.

To start, Plaintiff's application for injunctive relief is speculative since it relies on a hypothetical future retaliation. Hence, that application is facially unripe and will be dismissed. See Dawson v. Frias, 2010 U.S. Dist. LEXIS 30513 at *8 (D.N.J. Mar. 30, 2010) ("speculation as to what might or might not happen in the future" cannot serve as a basis for a valid claim) (citing Rouse v. Pauliilo, 2006 U.S. Dist. LEXIS 17225 (D.N.J. Apr. 5, 2006) (dismissing speculative claim as to hypothetical future retaliation and citing Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999)); Pilkey v. Lappin, 2006 U.S. Dist. LEXIS 44418, at *45 (D.N.J. June 26, 2006) ("Plaintiff's [anxieties] fail to

4

state a claim upon which relief may be granted'); Patterson v. Lilley, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003) (defendants could only be found liable to violations ensuing from an existing condition, not to a speculative future injury).

Moreover, Plaintiff's claims for monetary damages raised against Defendants in their official capacities are subject to dismissal as the matter of law. "[A]ny action that charges . . . an official with wrongdoing while operating in his or her official capacity as a [government] agent operates as a claim against the [government]. . . . Because a [constitutional tort] claim may not be brought directly against the [government] as such, an 'official capacity [constitutional tort] suit' would be an oxymoron." Farmer v. Perrill, 275 F.3d 958, 963 (10th Cir. 2001); Garden State Elec. Inspection Servs. v. Levin, 144 F. App'x 247, 251 (3d Cir. 2005) (suits brought against state officials acting in their official capacities are to be treated as suits against the employing government agency); see also Walker v. Beard, 244 F. App'x 439, 440 (3d Cir. 2007) (the Eleventh Amendment bars all suits against a state and its agencies in federal court that seek monetary damages).

Next, Plaintiff's claims raised against the Commissioner, Warden and Investigator are facially deficient on three different grounds, each equally dooming to Plaintiff's claims. First, "[a] defendant in a civil rights action must have personal involvement

5

in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Solan v. Ranck, 326 F. App'x 97, 100-01 (3d Cir. 2009), cert. denied, 558 U.S. 884 (2009) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988), and citing Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)); see also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior").  So, Plaintiff's reliance on supervisory positions of the Commissioner, Warden and Investigator cannot support to a viable claim.

Second, the fact that Plaintiff wrote letters or grievances to the Commissioner, Warden and Investigator, but did not receive responses to his mailings, does not alter the preceding point. It is well established that "[p]risoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights." Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997).  Thus, a failure to respond to an inmate's letter or grievances "does not violate his rights to due process and is not actionable." Stringer v. Bureau of Prisons, 145 F. App'x 751, 753 (3d Cir. 2005) (citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)).  Analogously, "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or

6

. . . to recognize [a grievance]." Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 465 (1979); Minnesota State Bd. Community Colleges v. Knight, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications").

Third, these Defendants' alleged election not to accommodate Plaintiff's desire to commence criminal proceedings against Roman and/or Zenyuk also does not change the initial analysis, since Plaintiff's unsatisfied desires cannot implicate his rights. A private plaintiff cannot force a criminal prosecution because the "authority to initiate a criminal complaint rests exclusively with state and federal prosecutors." Collyer v. Darling, 98 F.3d 211, 222 (6th Cir. 1996); Mercer v. Lexington Fayette Urban County Gov't, 52 F.3d 325 (6th Cir. 1995); Forney v. Woodridge Hosp. & Johnson City Med. Ctr., 2005 U.S. Dist. LEXIS 37257, at *6 (E.D. Tenn. Sept. 14, 2005); see also Savage v. Arnold, 403 F. Supp. 172 (E.D. Pa. 1975) (a private party cannot commence a criminal proceeding for failure to meet to comply with the requirements of Rules 3 and 4 of the Rules of Criminal Procedure) (citing United States v. Blierley, 331 F. Supp. 1182 (W.D. Pa. 1971); Brown v. Duggan, 329 F. Supp. 207 (W.D. Pa. 1971); Spader

7

v. Wilentz, 25 F.R.D. 492 (D.N.J), aff'd, 280 F.2d 422 (3d Cir.), cert. denied 364 U.S. 875 (1960)).

Moreover, Plaintiff's claims against Doe are also meritless since he neither asserted facts showing her personal involvement in the alleged wrong nor established that Doe knew about the risk of the incident that caused Plaintiff's injuries.

While it is true that "[b]eing violently assaulted in prison is . . . not part of the penalty that criminal offenders pay for their offenses against society," Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quotation marks and citation omitted), "not 'every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (quoting Farmer, 511 U.S. at 834). "To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to *that* substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." Id. (citing Farmer, 511 U.S. at 834, and Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997)).

Here, Plaintiff's assertions (i.e., Doe's alleged failure to ensure that the "red phones" worked in all prison units, the

8

recreation yard included) suggest, at most, negligence on her part and fails to show that Doe knew about the specific risk of Plaintiff's incident coming about.

> "Deliberate indifference" in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." Beers-Capitol [v. Whetzel,] 256 F.3d [120,] 125 [(3d Cir. 2001)]. It is not sufficient that the official *should have known* of the risk. Id. at 133. A plaintiff [must] prove an official's *actual* knowledge of a substantial risk to his safety . . . .

Bistrian, 696 F.3d at 367 (emphasis supplied).

Since Plaintiff's Complaint, being detailed and lengthy, unambiguously shows that Plaintiff's claims against the Commissioner, Warden, Investigator and Doe are limited to the facts stated in the Complaint, his challenges against these Defendants will be dismissed with prejudice. No leave to amend is warranted as to these lines of claim since another recital or paraphrasing of the same facts would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962); Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).

The foregoing leaves the Court with Plaintiff's claims against Roman and Zenyuk. As pled, these claims are deficient. In Bistrian, the Court of Appeals distinguished two qualitatively different types of incidents that could be suffered by an inmate. The Bistrian Court guided as follows:

> In this case, [the plaintiff] faults the guards who were present for his assaults for not responding quickly and aggressively enough. . . . [With regard to one incident, the plaintiff] claims that [an officer] was deliberately indifferent because he intervened only after several minutes of continued pummeling. [The record shows that the officer] was not standing around and doing nothing. He came to the . . . recreation [yard] . . . and, when he arrived, [he and] several officers . . . ordered the assailant to stop. When enough staff were present, they entered the [yard] and subdued the assailant. [The plaintiff's allegations raise factual] questions about the reasonableness of [the officer's] response [e.g.,] how long did [the officer] shout orders to [the assailant] before realizing that his words were futile? How often, in [the officer's] experience, does a prisoner stop violently assaulting another inmate simply because a guard orders him to do so? How many guards are enough to break up a fist fight? . . . It may be that summary judgment for [the officer] is on the horizon. But [at the pleading stage, the court should proceed this claim past the <u>sua sponte</u> dismissal stage. However,] we reach a different result with respect to the [second incident, where] officials at the scene attempted to stop the attack by firing pepper spray into the recreation [yard]. When this proved ineffective, they used a Tactical Blast Stun Munition to incapacitate [the assailant. The plaintiff claims that they] acted with deliberate indifference by delaying their use of the Tactical Blast Stun Munition and their decision to intervene forcibly. . . . [I]t is difficult, if not impossible, . . . to glean deliberate indifference from the guards' weapon of choice. Although the pepper spray ultimately proved ineffective, [nothing here] suggest[s] the decision to use it was unreasonable.

<u>Bistrian</u>, 696 F.3d at 371-72 (quotation marks and citations to the record omitted).

Under the distinction drawn in <u>Bistrian</u>, Plaintiff's claims against Roman are insufficient, and his claims against Zanyuk are dubious.

10

Relevant to Zenyuk, Plaintiff asserted that: (a) she was in the "bubble" booth overseeing the recreation yard at the time the incident took place; and (b) she was equipped with an inoperable "red phone" which prevented her from sending an alarm signal to other officers. Hence, at most, Zenyuk could have just abandoned her post and rushed into the yard hoping to assist Plaintiff by facing his four assailants on her own. Alternatively, she could have maintained her post (as she probably was obligated to do) and signal the alarm by means other than the "red phone."

Plaintiff's allegations suggest that she made the latter choice, and – under the guidance provided in <u>Bistrian</u> – "it is difficult, if not impossible, . . . to glean deliberate indifference from" her making that election. Thus, Plaintiff's allegations against Zenyuk will be dismissed. That being said, this Court cannot rule out the possibility that Plaintiff might be able to allege acts showing either that Zenyuk merely witnessed the incident and did nothing (<u>i.e.</u>, she did not even try to alert other officers by means other than the "red phone") or, in the alternative, he might be able to plead facts establishing the following three points: (a) Zenyuk was in the position to abandon her post; (b) she had sufficient time to abandon her post and rush into the recreation yard to intervene in the incident; (c) Zenyuk was sufficiently equipped to

11

intervene in the incident on her own, without signaling the alarm.

Thus, Plaintiff will be granted leave to state the exact facts of his claim against Zenyuk. An analogous narrowly-tailored leave will be granted as to his claims against Roman.

Here, Plaintiff stated that Roman violated his rights by failing to intervene in the incident.³ However, Plaintiff merely recited one of the elements of the failure-to-protect tort, i.e.,

---

³ Plaintiff tried to buttress this claim by speculating that Roman's election not to intervene could have been prompted by a retaliatory motive ensuing from Plaintiff's utterances of expressions of displeasure with the way Roman conducted the search of Plaintiff's cell three days prior to the incident. However, these retaliatory allegations are: (a) superfluous, since – if Roman was, in fact, deliberately indifferent to Plaintiff's risk of harm – no "buttressing" is required because Plaintiff's Eighth Amendment claim would stand on its own; and (b) Plaintiff's expression of displeasure with Roman's search of Plaintiff's cell was not "protected speech" within the meaning of the First Amendment and, thus, it cannot support a retaliation claim. See Garcetti v. Ceballos, 547 U.S. 410, 417 (2006) (the inmate should "speak as a citizen addressing matters of public concern"); see also Whitfield v. Snyder, 263 F. App's 518, 521-22 (7th Cir. 2008) (since a prisoner's job-related complaints involve matters of personal, rather than public, concern, they are not a protected speech); accord Nunez v. Ramirez, 2010 U.S. Dist. LEXIS 28689 (N.D. Cal. 2010) (an inmate's utterance, "If you saw who was drinking, why don't you address that person instead of disrespecting everybody" was not protected speech); Durkin v. Taylor, 444 F. Supp. 879 (D.C. Va. 1977)(prisoner telling an officer that he was tired of the "chicken shit" prison rules was not protected speech). This principle applies regardless of whether or not Plaintiff resorted to expletives in his expression of displeasure with Roman's search. See Roth v. United States, 354 U.S. 476, 485 (1957) ("obscenity is not within the area of constitutionally protected speech"); Porter v. Kimzey, 309 F. Supp. 993, 996 (N.D. Ga. 1970) ("libelous utterances are not . . . [a] constitutionally protected speech").

that Roman was "deliberately indifferent," but offered this Court no factual predicate in connection with his claim against Roman.

Here, the Complaint is wholly silent as to whether Roman was in the recreation yard, in close proximity with the recreation yard, monitoring the yard during the time of the incident, etc., as well as to whether the incident was in Roman's vantage point. The Complaint is equally silent as to whether Roman merely watched the incident and did nothing, or whether he called for assistance, or took any other action. Analogously, this Court is left to guess whether Roman was so equipped to be in the position to come to Plaintiff's aid on Roman's own while the incident was underway.

> No doubt, there are some circumstances in which an officer's response to an inmate attack is so half-hearted that it effectively amounts to no response at all. . . . But surely there are cases at the other end of the spectrum in which an inmate fails to allege that an officer's response was so unreasonable as to give rise to an entitlement to relief. For example, if an inmate alleges that an assailant landed two punches in rapid succession, the fact that guards saw the first punch and reacted quickly enough to prevent a third, but not the second, is not unreasonable. Such an allegation [fails to state a viable claim]. The key is whether prison officials acted reasonably.

Bistrian, 696 F.3d at 371-72.

Here, this Court cannot made an informed assessment of Plaintiff's facts since no *facts* are asserted. Therefore, Plaintiff's claims against Roman fail to meet the pleading standard of Rule 8. See Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009) ("conclusory or 'bare-bones' allegations [are insufficient]: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' [Plaintiff must] set out 'sufficient factual matter' to show that the claim is facially plausible") (quoting Iqbal, 556 U.S. at 678). Correspondingly, Plaintiff's claim against Roman will be dismissed with leave to state the facts of that claim. Cf. In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276-77 (3d Cir.2006) (a plaintiff must assert all the essential factual background that would accompany "'the first paragraph of any newspaper story' — that is, the 'who, what, when, where and how' of the events at issue") (citations omitted).

For the foregoing reasons, Plaintiff's application to proceed in this matter in forma pauperis will be granted, and the Clerk will be directed to file his Complaint.

Plaintiff's application for injunctive relief will be dismissed as unripe. Plaintiff's claims against all Defendants in their official capacities will be dismissed as a matter of law. Plaintiff's claims for monetary damages raised against the Commissioner, Warden, Inspector and Doe, in their individual capacities, will be dismissed for failure to state a claim upon which relief can be granted. Such dismissal will be with prejudice.

14

Plaintiff's claims for monetary damages raised against Defendants Roman and Zenyuk will be dismissed with narrowly-tailored leave in order to allow Plaintiff an opportunity to file an amended pleading stating only the relevant facts, as explained in this Opinion, without resorting to conclusive, bold or self-serving statements and without reciting the elements of his claim.

An appropriate Order follows.

                                              s/Renée Marie Bumb
                                              **RENÉE MARIE BUMB**
                                              **United States District Judge**

Dated: February 27, 2014