<u>NOT FOR PUBLICATION</u>                                    [ECF No. 23]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

RODNEY WALKER,

     Plaintiff,

         v.

SCO. ANDREW ROMAN, et al.,

     Defendants.

Civil No. 14-1182 (RMB/AMD)

**OPINION** [PUBLIC]

APPEARANCES:

Rodney Walker
South Woods State Prison
215 Burlington Road
Bridgeton, NJ 08302

Plaintiff <u>Pro</u> <u>Se</u>

Shana Bellin, Deputy Attorney General
Robert Lougy, Acting Attorney General of New Jersey
R.J. Hughes Justice Complex
P.O. Box 116
Trenton, NJ 08625

Counsel for Defendants SCO Andrew Roman and SCO Natalie Zenyuk

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon the motion for summary judgment of Defendants SCO Andrew Roman ("Roman") and SCO Natalie Zenyuk ("Zenyuk"). (Mot. for S.J., ECF No. 23.) Plaintiff Rodney Walker filed this action February 24, 2014, and he filed an Amended Complaint on April 2, 2014. (Compl., ECF. No. 1; Am. Compl., ECF

No. 4.) Upon screening the Amended Complaint pursuant to 28 U.S.C. §§ 1915A, 1915(e)(2)(B), this Court allowed Plaintiff's claims for monetary damages against Roman and Zenyuk in their individual capacities to proceed, and dismissed the remaining claims. (Opinion and Order, ECF Nos. 5, 6.) Discovery was conducted.

Defendants brought the present motion for summary judgment on April 8, 2016. (Mot. for S.J., ECF No. 23; Brief in Supp. of Mot. for S.J. ("Defs' Brief"), ECF No. 24-1.) On August 19, 2016, Defendants supplemented their motion for summary judgment with the Declaration of Rebecca Smith ("Smith Decl."), Executive Assistant at Bayside State Prison. (ECF Nos. 31-1, 32.) Plaintiff responded by filing a reply brief and exhibit in support of his exhaustion of administrative remedies. (ECF No. 33.) This Court has considered the pleadings, motions, briefs, and supporting documents, and will decide the motion on the papers, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons explained below, the Court will grant Defendants' motion for summary judgment.

I.   **BACKGROUND**

In his Amended Complaint, Plaintiff alleged the following against Roman and Zenyuk. On October 23, 2012, in Bayside Prison E Unit, recreation time was called at approximately 2:30 p.m. As Plaintiff entered the recreation yard, he was assaulted by four

unknown individuals.[1] There were at least 45 people present in the yard. Plaintiff noticed Defendant Zenyuk standing in the "Bubble", overlooking the recreation yard on E Unit. Zenyuk was unable to call for help because the phone in the Bubble was inoperable. She stood in the Bubble and watched the assault without attempting to intervene or alert other officers. Roman and Zenyuk had ample time to come to Plaintiff's aid.

Plaintiff never saw Roman until a response team came into the yard to order everyone down on the ground. The assault lasted forty-five minutes. Plaintiff alleged Roman's and Zenyuk's failure to protect him or come to his aid resulted in his serious bodily injuries.

Plaintiff submitted the Statement of Jay Boyce with his Amended Complaint. (ECF No. 4 at 6.) Boyce said that on October 23, 2012, from his cell window, he witnessed two inmates assaulting Plaintiff. He saw "Ms. Z (an officer)" watch the incident unfold. The housing officers did not go into the yard to break up the fight. The fight was broken up when a response team in riot gear went into the yard.

In support of their motion for summary judgment, Defendants argued that Plaintiff's claims should be dismissed because

---

[1] In his deposition, Plaintiff said he was only aware of two inmates assaulting him, but the Incident Report said there were four. (Defs' Brief, Ex. B, Transcript Depo. of Rodney Walker, p. 54, lines 8-20, ECF No. 24-6.)

Plaintiff failed to exhaust his administrative remedies. Defendants also asserted that the Amended Complaint does not properly raise a failure to intervene claim because Plaintiff was assaulted by other inmates, not officers. As a defense to a failure to protect claim, Defendants contended they did not have a realistic and reasonable opportunity to intervene. Defendants submitted that the prison's Internal Management Procedure mandated ███████ ████████ ████ ██ █ ████ ████ ███ ████ ████████ ███████ ██ ██ █ █ █████ Finally, Defendants asserted qualified immunity.

## II.  DISCUSSION

### A. <u>Summary Judgment Standard</u>

Summary Judgment is proper where the moving party "shows there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Abraham v. Raso</u>, 183 F.3d 279, 287 (3d Cir. 1999). The moving party has the burden to show there is an absence of evidence to support the nonmoving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

A party asserting that a fact is or is not genuinely disputed must support the assertion by citing materials in the record, including depositions, documents, affidavits, declarations, or other materials. Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be based on

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Pursuant to Federal Rule of Civil Procedure 56(e):

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
>> (1) give an opportunity to properly support or address the fact;
>>
>> (2) consider the fact undisputed for purposes of the motion;
>>
>> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
>>
>> (4) issue any other appropriate order.

Additionally, Local Civil Rule 56.1(a) deems a movant's statement of material facts undisputed where a party does not respond or file a counterstatement.

In determining whether there is a genuine dispute of a material fact, the court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences from those facts. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A fact raises a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

### B. <u>Failure to Exhaust Administrative Remedies</u>

Defendants contended Plaintiff failed to exhaust his administrative remedies, as required under 42 U.S.C. § 1997e(a). In their Statement of Material Facts, Defendants stated "Plaintiff did not file a single inmate remedy form regarding the facts giving rise to his allegations of failure to protect, unsafe conditions, or failure to intervene. (Statement of Material Facts in Supp. of Defs' Mot. for S.J., ¶ 41, ECF No. 24-3.) Defendants provided the Declaration of Rebecca Smith, Executive Assistant at Bayside State Prison. (Smith Decl., ECF No. 31-1.) Smith included an excerpt of the Inmate Handbook for Bayside State Prison, which describes the administrative remedy program. (Inmate Handbook, ECF No. 32 at 5.) The remedy program is available to inmates of Bayside State Prison. (<u>Id.</u>, ¶ B) The procedure begins by submitting Part I of Inmate Remedy System Form IRSF-101. (<u>Id.</u> at 6, ¶¶ 1-4.) The form will only be processed if it is "placed into the correctional facility box marked <u>INMATE REMEDY FORMS ONLY</u>." (<u>Id.</u> at 7, ¶ 1.) If the form is forwarded by any other means it "<u>will not</u> be processed." (<u>Id.</u>) The inmate must submit the written form within ten business days of the incident, "unless it is not possible to file within such period." (<u>Id.</u> at 9, ¶ 1.) Here, the ten business day period expired on November 6, 2012.

Smith ran a search for Administrative Remedy Forms filed by Plaintiff while he was incarcerated at Bayside State Prison, and

no records were found. (Smith Decl., ECF 31-1 at ¶¶ 11-12.) On his IFP application, Plaintiff indicated that he was transferred to South Woods State Prison on November 8, 2012. (ECF No. 1-1 at 2.)

In reply to Defendants' motion for summary judgment based on the failure to exhaust administrative remedies, Plaintiff submitted a Business Remit showing that he sent an Inmate Remedy form to Administrator John Powell at Bayside Prison on January 11, 2013. (Exhibit, ECF No. 34.) Plaintiff also asserted that he made numerous calls to the Central Ombudsperson when he did not receive a response to the Inmate Remedy. (Reply, ECF No. 33 at 3.) Plaintiff, however, has not argued or established that it was impossible for him to file the written form at Bayside State Prison, using the proper procedure, within ten business days of the incident.

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion under this provision is mandatory. Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). Furthermore, the provision requires "proper exhaustion." Id. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no

adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. "The exhaustion requirement includes a procedural-default component, and a prisoner must comply with the prison grievance procedures to properly exhaust his claims." Veasey v. Fisher, 307 F. App'x 614, 616 (3d Cir. 2009) (citing Spruill v. Gillis, 372 F.3d 218, 230-31 (3d Cir. 2004)).

Plaintiff did not properly exhaust Bayside State Prison's administrative remedy program because he did not file a written IRSF-101 form within ten business days of the incident, by November 6, 2012. Moreover, Plaintiff has not established that it was "not possible to file [a written form] within such period," as provided by the Inmate Handbook. (Inmate Handbook, ECF No. 32 at 9 ¶ 1.)[2] If, for example, Plaintiff had been transferred to South Woods State Prison within that ten day period, it would not have been possible for him to properly comply with Bayside State Prison's

---

[2] Plaintiff claims that "right after the assault, Plaintiff was taken to the infirmary where he received medical care and was placed on TCC status, which made him unable to exhaust administrative remedies while at Bayside State Prison." (Reply, ECF No. 33 at 4.) The undisputed facts, however, establish that Plaintiff was not in the infirmary for the entire ten day period. Rather, Plaintiff was seen in the infirmary at Bayside State Prison on October 23, 2012, where he received sutures for his head laceration and was treated for a broken nose, right knee and hip swelling. (Answers to Defendants' Interrogatories [with exhibits], ECF No. 19 at 35-51.) He was then discharged with pain medication and medically cleared for lock-up the same day. (Id. at 35-37, 40, 42.) He received follow-up treatment at Bayside State Prison until his sutures were removed on November 1, 2012. (Id. at 50-51.)

administrative remedy program within ten days of the incident and Plaintiff's failure to exhaust his administrative remedies may have been excused. Notably, however, Plaintiff was not transferred to South Woods State Prison until November 8, 2012, two days after the ten day period expired. Additionally, Plaintiff's attempt to exhaust administrative remedies by sending a form to Administrator John Powell at Bayside Prison on January 11, 2013 was not proper exhaustion.

Once a properly supported motion for summary judgment has been made, the non-movant's burden is rigorous: he "must point to concrete evidence in the record that supports each and every essential element of his case." Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995) (citing Celotex, 477 U.S. at 322). Plaintiff has not established that he properly exhausted his administrative remedies or that it was not possible for him to do so. Therefore, Defendants are entitled to summary judgment based on Plaintiff's failure to properly exhaust administrative remedies.

In any event, as discussed below, the Court alternatively finds that Defendants are entitled to summary judgment on the merits, as the undisputed facts establish that no constitutional violation occurred and, even if such a violation had occurred, Defendants are entitled to qualified immunity. In doing so, the

Court has viewed the facts in the light most favorable to Plaintiff and made all reasonable inferences from those facts.

## C. **Failure to Intervene**

In Smith v. Mensinger, the Third Circuit held that "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983, if the officer had a reasonable opportunity to intervene and simply refused to do so." 293 F.3d 641, 650 (3d Cir. 2002). Smith, however, involved the duty of a corrections officer to intervene when an inmate is beaten by another corrections officer. Id.

The Third Circuit, referring to the use of excessive force by a law enforcement officer, reasoned that "[t]he restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots or clubs." Id. at 651. Thus, the court held, "'if [plaintiff] can show at trial that an officer attacked him while [defendant] ignored a realistic opportunity to intervene, he can recover.'" Id. at 652 (quoting Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000)). "Moreover, neither rank nor supervisory status is a factor in assessing whether [defendant] had 'a realistic opportunity to intervene.'" Id.

The Court does not construe the Amended Complaint as containing an Eighth Amendment claim for failure to intervene as

recognized under Smith v. Mensinger. Such claims are limited to circumstances where a law enforcement officer is using force against an inmate. However, the Amended Complaint contains a failure to protect claim under the Eighth Amendment, which is analyzed under a similar standard as a failure to intervene claim. See Farmer v. Brennan, 511 U.S. 825, 844 (1994) ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

**D. Failure to Protect**

"[T]he Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials 'a duty to protect prisoners from violence at the hands of other prisoners.'" Bistrian v. Levi, 696 F.3d 352, 366-67 (3d Cir. 2012) (quoting Farmer, 511 U.S. at 833; see also Beers-Capitol v. Whetzel, 256 F.3d 120, 130-33 (3d Cir. 2001); Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997)). The elements of a failure to protect claim are: (1) the inmate was incarcerated under conditions posing a substantial risk of serious harm; (2) the prison official acted with deliberate indifference to the inmate's health and safety; and (3) the official's deliberate indifference caused the inmate harm. Id. at 367. "'[P]rison officials who act reasonably cannot be found liable' on a failure-to-protect claim." Id. at 368 (quoting Farmer, 511 U.S. at 845.).

Defendants contend Plaintiff has not produced evidence to establish each element of a claim for failure to protect him from inmate violence. Once the inmates began assaulting Plaintiff in the recreation yard, Roman and Zenyuk were aware of conditions that posed a substantial risk of serious harm to Plaintiff, satisfying the first element of a failure to protect claim. The question is whether Defendants Zenyuk and Roman acted with deliberate indifference to Plaintiff's health and safety after the assault started. Plaintiff argued that Roman and Zenyuk were deliberately indifferent because they failed to intervene to stop the assault and did nothing until the riot team arrived forty-five minutes later.

Defendants offered the Department of Corrections ("DOC") Internal Management Procedures in support of their claim that they acted reasonably in response to the assault on Plaintiff; therefore, they did not act with deliberate indifference.





Defendants also submitted the prison incident report, documenting what happened during the assault on October 23, 2012. (Defs' Brief, Ex. C, ECF No. 24-7.) The report states Zenyuk was in the control booth in E Unit when she heard loud noises coming

from the outside courtyard, where she saw three inmates punching and kicking Plaintiff. (Id.) She reached for the phone to initiate the emergency notification system but the phone was inoperable. (Id.) Roman, who was nearby in E Unit, also saw the fight, and he called a Code ■ over his radio. (Id.) He then secured the unit and ordered those inmates in the courtyard who were not involved in the fight to go to the other side of the courtyard. (Id.) Roman and Zenyuk gave several direct orders for the inmates to stop fighting and lay down on the ground. (Id.) The inmates did not stop fighting until the response team arrived. (Id.)

Defendants asserted "the record indisputably establishes that Defendants responded to the incident to help Plaintiff by calling the Code ■ as the riot team arrived on scene shortly after the assault began." (Defs' Brief, ECF No. 24-1 at 18.) In Plaintiff's Amended Complaint, he alleged the fight lasted at least 45 minutes before the response team arrived. (Am. Compl., ¶ 7, ECF No. 4.) Defendants argued this is an unsupported claim that cannot survive summary judgment.

### 1.   45 Minute Response Time

The incident report indicates the assault began at 14:50. (Def's Brief, Ex. C, Incident Report, ECF No. 24-7.) Consistent with this report, Plaintiff, in his deposition, said the incident began between 2:30 and 3:00 p.m. (Defs' Brief, Ex. B, Transcript Depo. of Rodney Walker, p. 45, lines 23-25, ECF No. 24-6.) After

14

two inmates punched Plaintiff, he blacked out for a few seconds. (Id., p. 63, lines 8-23.) In his deposition, Plaintiff said he knew the fight lasted more than fifteen minutes before anyone came to stop it. (Id., p. 118, lines 2-18.)

Sergeant Kita responded to Roman's call for a Code ■. (Defs' Brief, Ex. C, Incident Report, ECF No. 24-7.) When Kita arrived, he saw three inmates assaulting Plaintiff. (Id.) After Kita gave several orders to stop fighting, the inmates complied. (Id.) "A crime scene was established at 1315 in the court yard area where the assault had happened." (Id.) The crime scene was closed at 16:45, after 46 inmates were pat frisked and searched for blood stains or weapons. (Id.)

There is nothing in the record that establishes, without dispute, how long the assault on Plaintiff lasted. Plaintiff, in his deposition, said it was more than fifteen minutes, and in his Amended Complaint he said it was at least 45 minutes. The incident report indicates that the incident began at 2:50 p.m. and the investigation was closed at 4:45 p.m. The report also states that the crime scene was established at "1315" but if the incident began at 14:50, this was obviously a mistake and does not establish when the fight ended.

The issue of how long the assault lasted must ultimately be resolved by the fact finder based on the totality of the evidence. See Evans v. Cameron, 442 F. App'x 704, 707-08 (3d Cir. 2011)

15

(holding district court improperly resolved a factual dispute concerning length of assault on inmate at summary judgment stage). On summary judgment, the Court must view the facts in the light most favorable to the non-moving party. Therefore, the Court will assume the fight lasted forty-five minutes.

### 2.    Following the Internal Management Procedures

Summary judgment turns on whether it was reasonable for Defendants Roman and Zenyuk to stand by until the response team arrived forty-five minutes later. The undisputed facts are that Roman did not physically enter the area to intervene in the assault on Plaintiff until a response team arrived. Zenyuk attempted to call a Code █, but her equipment malfunctioned and she was unable to make the call. She did not physically intervene in the assault on Plaintiff. Defendants contend they acted reasonably by following the Internal Management Procedures.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ Defendants have offered no reason other than compliance with the above procedures to explain why they waited to physically intervene.

In Bistrian, the Third Circuit held it was improper for the district court to grant a motion to dismiss where the plaintiff alleged that a corrections officer did not intervene in an inmate-on-inmate assault until after several minutes of continued pummeling. 696 F.3d at 372. The Court found Plaintiff had plausibly alleged an unreasonable response to the attack, where the corrections officer shouted for the assailant to stop and then waited until "enough staff were present" to enter the area and subdue the assailant. Id. The Third Circuit explained that, in light of the procedural posture of the case, there were "enough questions about the reasonableness of [defendant's] response to preclude dismissal," but that "[i]t may be that summary judgment for [defendant] is on the horizon." Id.

Here, the Court considers the reasonableness of Defendants' response on summary judgment. The undisputed facts establish that Defendants' relied upon the DOC Internal Procedures in deciding to initiate the emergency notification system, ████████ ████████ ████████████████████████████ before physically intervening in the assault on Plaintiff. Additionally, it is undisputed that at least two inmates assaulted Plaintiff in a small recreation yard while more than forty other inmates were present and that Defendants Roman and Zenyuk were the only two corrections officers nearby until the response team arrived. In light of the undisputed facts, the Court finds that no reasonable juror could find that Defendants

17

Zenyuk and Roman acted unreasonably by following the DOC Internal Procedures and deciding not to physically intervene in the assault on Plaintiff until the response team in riot gear arrived ██ ██████ ██ ███ █████ █. Therefore, as the undisputed facts establish that no constitutional violation occurred, the Court will grant Defendants' motion for summary judgment.

### 3.   Qualified Immunity

Defendants asserted that, even if a reasonable juror could find that a constitutional violation occurred, they are nonetheless entitled to qualified immunity on the failure to protect claim because "Plaintiff's rights were not clearly established based on the facts of this case." (Defs' Brief, ECF No. 24-1 at 24.) Given that the Court has found that no constitutional violation occurred, it need not address the issue of qualified immunity. However, in an abundance of caution, the Court will do so.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); accord Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014) ("An official sued under § 1983 is entitled to qualified immunity unless it is shown that

18

the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct."). Qualified immunity is immunity from suit and, as such, should be resolved as early as possible. Pearson, 555 U.S. at 231-32. It protects from suit "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The question of whether Roman and Zenyuk are entitled to qualified immunity requires this Court to answer two questions: "(1) whether the officer violated a constitutional rights," and "(2) whether the right was clearly established, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201-02 (2001). The questions may be answered in either order. Pearson, 555 U.S. at 242.

A defendant has not violated a clearly established right unless the contours of that right were "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating [the right]." Plumhoff, 134 S. Ct. at 2023 (citing al-Kidd, 563 U.S. at 741). Stated another way, "'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" Id. (quoting al-Kidd, 563 U.S. at 741).

Furthermore, courts should not define clearly established law "at a high level of generality" because to do so avoids the question of whether the official acted reasonably in the particular circumstances. Id. Rather, the "inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (citing Saucier, 533 U.S. at 206).

There is a clearly established right to be free from cruel and unusual punishment, as set forth in the Eighth Amendment. Furthermore, in the abstract, it is clearly established that a corrections officer must intervene on an inmate-on-inmate assault if he has a reasonable opportunity to do so. See, e.g., Evans v. Cameron, 442 F. App'x 704, 708 (3d Cir. 2011) (citing Curtis v. Everette, 489 F.2d 516 (3d Cir. 1973)). The inquiry, however, does not end there, as the Court must assess the specific circumstances of the case.

The Court must ask, "in the factual scenario established by the plaintiff, would a reasonable officer have understood that his actions were prohibited?" Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002). Here, the relevant question is whether Defendants' decisions to follow the DOC Internal Management Procedures ▮ ▬▬▬▬▬▬▬▬▬ ▮ when they became aware of the inmate-on-inmate assault and to wait to physically intervene in said assault until the response team arrived, where the officers were greatly

20

outnumbered by the inmates, violated a clearly established right, such that it would have clear to a reasonable officer that his conduct was unlawful. In the context of this case, the Court cannot find that Defendants' decision to follow the DOC Internal Management Procedures and not physically intervene in the assault until after the arrival of the response team in riot gear was a violation of a clearly established right.

It is undisputed that Plaintiff was assaulted by at least two inmates in a small recreation yard with more than forty other inmates present, with only the two Defendant officers nearby. Defendants were greatly outnumbered by inmates in the yard, and their intervention posed a significant risk to their own safety, and a risk of escalating the incident without sufficient staff to respond. See Thomas v. Cumberland Cty. Corr. Facility, No. CIV. 09-1323 JBS-JS, 2011 WL 6756897, at *9 (D.N.J. Dec. 22, 2011) ("'[p]rison guards are not constitutionally required to take heroic measures and risk serious physical harm by intervening immediately in an inmate's . . . assault on another inmate.'") (quoting Holloman v. Neily, No. CIV. A. 97-8067, 1998 WL 828413, at *2 (E.D. Pa. Nov. 25, 1998) (citing Winfield v. Bass, 106 F.3d 525, 532-33 (4th Cir. 1997) (en banc); Prosser v. Ross, 70 F.3d 1005, 1008 (8th Cir. 1995); MacKay v. Farnsworth, 48 F.3d 491, 493 (10th Cir. 1995)). What's more, the DOC Internal Management Procedures ███████ ███ ███████ ████████ ███ ████ ███████

██████████████ ██ ███ █ ███ ██ █████ ████ ██ ████. The officers did so.

It would not have been clear to a reasonable officer, confronted with several inmates assaulting Plaintiff in the small recreation yard, while dozens of other inmates were present, and bound by the DOC Internal Management Procedures, that his decision to follow such procedures and wait for the response team to arrive before physically intervening in the assault was unlawful or violated a clearly established constitutional right. Accordingly, the Court finds that, even if Defendants had violated Plaintiff's constitutional right, that right was not clearly established such that it would have been clear to a reasonable corrections officer in Defendants' positions that his decision not to physically intervene on the assault on Plaintiff until the response team arrived and to instead sound a Code █ in accordance with DOC Internal Management Procedures would be unlawful. Thus, Defendants are entitled to qualified immunity.

**III. CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted. An appropriate Order shall issue on this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: October 12, 2016